IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARK FRANCIS AUGARE,<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,[1]<br>Acting Commissioner of the Social<br>Security Administration,<br><br>    Defendant. | Case No. CIV-20-192-RAW-SPS |

## REPORT AND RECOMMENDATION

The claimant Mark Francis Augare requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human*

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Services*, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."  *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-two years old at the time of the administrative hearing (Tr. 55).  He completed eighth grade and has previously worked as an industrial cleaner, poultry farm laborer, and cannery worker (Tr. 27-28, 252).  The claimant alleges inability to work since November 6, 2017, due to chronic back pain, lumbar stenosis, and spondylolisthesis (Tr. 251).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on November 6, 2017.  His applications were denied.  ALJ Elizabeth McGee conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 6, 2019 (Tr. 15-29).  The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal.  *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation.  She found at step four that the claimant could perform sedentary work as defined in 20 C.F.R.

§§ 404.1567(a) and 416.967(a), except that he could only occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; and never climb ladders/ropes/scaffolds, work around moving mechanical parts, or work at unprotected heights and work around deep water and open flames. Finally, she found that he can frequently balance, but that he requires the use of a cane to stand and walk (Tr. 19). The ALJ then concluded at step five that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, document preparer, table worker, and addresser (Tr. 27-28).

### Review

The claimant's sole contention of error is that the ALJ failed to properly evaluate the opinion of his treating physician, Dr. Nicholas Bentley. The undersigned Magistrate Judge agrees with this contention, and the case should be remanded.

The ALJ found the claimant had the severe impairments of degenerative disc disease in his lumbar spine with nerve root compression and surgery, discectomy and interbody fusion and post-surgery MRI scan with moderate bilateral neural foraminal narrowing, and post-laminectomy syndrome of lumbar spine (Tr. 17). The relevant medical evidence reveals that prior to his November 4, 2017 alleged onset date, the claimant was hospitalized in October 2012 due to an altered mental state, but he was noted to have low back pain and instability at the time (Tr. 341). A CT of the lumbosacral spine revealed grade II anterolisthesis of L5 on S1 with bilateral spondylolysis and compromise of the lateral recesses and neural foramina bilaterally with suggestion of possible bilateral compression L5 nerve roots (Tr. 355). A 2014 MRI of the lumbar spine revealed bilateral L5

spondylolysis with grade 1 anterolisthesis and resulting bilateral L5/S1 neural foraminal stenosis, as well as an S2 perineural cyst (Tr. 366).  On May 22, 2015, the claimant underwent a lumbar fusion for a bilateral L5 pars defect by Dr. Kris Parchuri (Tr. 374, 431-432).  By March 2016, the claimant's surgeon noted that he continued to have shoulder and back pain, informed him that he would have residual back pain, and provided a 50-pound weight-lifting restriction (Tr. 445-446).

  The claimant continued to complain of pain in his lower back and tingling down his right leg and presented to the emergency room on March 17, 2017 with this pain (Tr. 509-510).  The treatment note indicates that the claimant was slow to get out of his chair and ambulated with a limp, and he was diagnosed with right L5-S1 radiculopathy (510-513).  He was advised to follow up with his medical care provider and to consider an MRI (Tr. 513).  A July 31, 2017 MRI of the lumbar spine revealed L5-S1 postsurgical change with approximately 10 mm anterolisthesis and moderate bilateral neuroforaminal narrowing, along with an approximately .9 cm S1 level right sacral Tarlov cyst (Tr. 524).

  On November 3, 2017, the claimant again presented to the emergency room, reporting that his legs had stopped working and he had been incontinent of bladder and bowel (Tr. 527).  A CT of the lumbar spine that day revealed an L5 pars defect and spondylolisthesis at L5-S1, postoperative changes at L5-S1, with no significant changes in spondylosisthesis and neural foraminal narrowing from the 2012 scan (Tr. 556).  Dr. Bentley wrote a prescription for the claimant for a four-wheeled walker (Tr. 628).  He was referred for physical therapy, and presented walking using a four-wheeled walker on November 13, 2017 (Tr. 548).  On November 29, 2017, the claimant returned to his

surgeon, who noted the claimant had a mildly antalgic gait and that he walked with a four-wheeled walker (Tr. 558). Dr. Parchuri assessed the claimant with post-laminectomy syndrome of the lumbar spine, chronic pain, lumbar radiculopathy, and low back pain (Tr. 559). He recommended that the claimant see a neurologist because he could not find a spine-related issue for the claimant's pain (Tr. 559, 566). The claimant then had an MRI of the brain, which revealed periventricular white matter changes which are advanced for a patient at that age, and a demyelinating process was not entirely precluded. The radiologist recommended clinical correlation (Tr. 569). Upon review of the brain MRI, Dr. Sawyer Sparks stated that it showed minimal small vessel disease, not consistent with MS lesions but likely secondary to smoking and hypertension history (Tr. 622).

On April 11, 2018, the claimant saw his treating physician, Dr. Bentley, who noted the claimant had difficulty rising from the chair and walking, and that he used a cane for support. Dr. Bentley noted that the claimant did not report stumbling and/or falling, but that his legs would simply give out on him (Tr. 596). Dr. Bentley reported poor range of motion of the lower extremities (Tr. 596). An August 7, 2018 treatment note from Dr. Bentley reports that the claimant was on chronic pain management and opined that the claimant had been given "failed, poor surgical follow-up" (Tr. 637). Dr. Bentley noted that when the claimant stood up, "he had pissed in his chair" (Tr. 637). Treatment notes indicated that the claimant used a cane to ambulate and for balance, and that he had an abnormal gait (Tr. 637). He recommended that the claimant continue with his cane and gave the claimant a fair prognosis (Tr. 638).

On March 5, 2019, Dr. Bentley completed a physical Medical Source Statement (MSS) as to the claimant's ability to do work-related activities. Dr. Bentley indicated that the claimant could stand/walk less than thirty minutes at one time and less than two hours in an eight-hour workday, that he could sit less than thirty minutes at one time and less than two hours in an eight-hour workday, and that he could lift/carry less than ten pounds (Tr. 630-631). He indicated that the claimant could handle occasional functioning with each hand, and that he required positional changes to help relieve symptoms "always to relieve pain" (Tr. 631). He did not believe the claimant could perform work on a sustained basis, stating that he required frequent positional changes for back pain for which he cited the claimant's abnormal MRI with further workup (Tr. 632). Finally, he indicated that the claimant could perform simple tasks only (Tr. 632).

A state agency physician originally determined that the claimant could perform sedentary work but could only occasionally climb ladders/ropes/scaffolds, stoop, crouch, or crawl; frequently climb ramps/stairs; and that he was unlimited in balancing (Tr. 96-97). On reconsideration, Dr. William H. Oehlert agreed the claimant could perform sedentary work but found he could never climb ladders/ropes/scaffolds; only occasionally, climb ramps/stairs, stoop, kneel, crouch, or crawl; and frequently balance (Tr. 121-122).

At the administrative hearing, the claimant testified that he always uses either a walker or a cane to walk, and that he uses the walker about a third of the time and the cane about a fourth of the time (Tr. 50). He then later stated, again, that he has to use either his walker or his cane to walk (Tr. 57). A vocational expert ("VE") also testified as to the claimant's work history and ability to perform work. In response to certain hypotheticals

and questions, the VE stated that the jobs identified could be performed if the claimant used a cane, but that the jobs would not be feasible with the use of a walker requiring two hands (Tr. 60-61).

In her written opinion at step four, the ALJ thoroughly summarized the claimant's testimony as well the medical evidence in the record (Tr. 20-26). She then stated in a one-sentence paragraph that she found the state reviewing physician opinions "persuasive and consistent with the evidence of record as a whole" (Tr. 27). As to Dr. Bentley's opinion, she adopted a November 2017 statement where Dr. Bentley stated that the claimant should have a desk-oriented job but rejected his 2019 MSS as not persuasive because the limitations were not consistent with unspecified treatment notes and objective medical findings (Tr. 27). She also questioned his limitation of the claimant to simple tasks because the claimant said he had no side effects from his medication, and that he had previously reported he can pay attention and finish what he starts (Tr. 27). She then concluded that the claimant was not disabled (Tr. 29).

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a) & 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b) & 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of

treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c) & 416.920c(c).  Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered.  *See* 20 C.F.R. §§ 404.1520c(b)(2) & 416.920c(b)(2).  Generally, the ALJ is not required to explain how the other factors were considered.  *Id.*  However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3) & 416.920c(b)(3).

The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record.  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  In this case, the ALJ thoroughly summarized Dr. Bentley's opinions, as well as the opinions from the state reviewing physicians, but did not provide a proper analysis as to the factors of supportability and consistency.  This was error because the regulations discussed above require the ALJ to explain how persuasive she found the medical opinions she considered,

and as part of that explanation, also require her to specifically discuss the supportability and consistency factors. *See* 20 C.F.R. §§ 404.1520c(b) & (c), 416.920c(b) & (c).

More specifically, the ALJ provided no discussion or analysis as to the supportability factor, which alone is reversible error. As to the consistency factor, although she stated his opinion was not consistent with the evidence of record, she likewise largely failed to identify what that inconsistent evidence was. *See, e.g., Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings.") (*quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). *See also Wise v. Barnhart*, 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was 'inconsistent with the credible evidence of record,' but he fails to explain what those inconsistencies are.") [citation omitted].

Furthermore, the ALJ's analysis also ignores the evidence that Dr. Bentley's prescription for an assistive device was for a four-wheeled walker, not a one-handed cane, and that the claimant testified he used a walker more than he uses a cane. This is particularly of concern where, as here, the transcript from the administrative hearing indicates that the type of assistive device used by the claimant is specifically determinative as to whether the claimant can perform any work. It was error for the ALJ to "pick and choose" her way through the evidence in this record in order to avoid finding the claimant disabled. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that

the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted]; *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir.1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") [citation omitted].

Because the ALJ failed to properly evaluate Dr. Bentley's opinion, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

-12-

**DATED** this 31st day of August, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**